UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

DAYTON FAMILY PRODUCTIONS, INC.,
*et al.*

Defendants.

Case No. 2:97-CV-00750-PMP (LRL)

## PRELIMINARY INJUNCTION

Plaintiff Federal Trade Commission ("FTC" or "Commission") filed this contempt action on January 28, 2013, and upon motion by the FTC, this Court issued an *ex parte* temporary restraining order ("TRO") with asset freeze, appointment of a Receiver, and other equitable relief.

This Court has considered the FTC's January 28, 2013 Motions for Contempt and for a Temporary Restraining Order and Preliminary Injunction; memoranda, declarations, and exhibits submitted in support thereof; the reports and recommendations of the Temporary Receiver; Contempt Defendant Glen Burke's Limited Opposition to Motion for Preliminary Injunction; the FTC's Reply and memoranda, declarations, and exhibits submitted in support thereof; and any evidence introduced at a hearing on March 1, 2013, and finds as follows:

1.     This Court has jurisdiction over this matter for all purposes and as provided in Section XV (Retention of Jurisdiction) of the Stipulated Final Order for Permanent Injunction entered on October 1, 1998 ("Permanent Injunction").

2.     There is good cause to believe Contempt Defendants Glen E. Burke ("Burke") and American Health Associates, LLC ("AHA") have actual notice of the Permanent Injunction and the ability to comply with the Permanent Injunction.

3.      There is good cause to believe Contempt Defendants have violated the Permanent Injunction, and a substantial likelihood the FTC will prevail on the merits of this action.  Section III of the Permanent Injunction bans Burke from telemarketing, and Section II.B prohibits the making of misrepresentations in connection with the promotion or sale of goods or services. There is good cause to believe that AHA, acting under Burke's control and at his direction, telemarketed vitamins to consumers across the United States by claiming that consumers were specially selected to win a valuable prize in a promotional contest if they purchased Contempt Defendants' vitamins.  There is good cause to believe these claims were false and that AHA sent consumers only inexpensive costume jewelry or artwork as their prizes.  There is therefore a substantial likelihood that the FTC will prevail in showing that Contempt Defendants violated Sections III and II.B of the Permanent Injunction.

4.      The Court has considered the FTC's likelihood of ultimate success and weighed the equities, and finds that a preliminary injunction providing for continuation of the asset freeze, appointment of a receiver, preservation of business records, financial disclosures, and other equitable relief is in the public interest.

5.      Federal Rule of Civil Procedure 65(c) does not require security of the United States or an officer or agency thereof.

## I.      DEFINITIONS

For the purposes of this Preliminary Injunction, the following definitions apply:

1.      "Assets" means any legal or equitable interest in, right to, or claim to, any and all real and personal property, including but not limited to chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, inventory, checks, notes, accounts, credits, receivables, shares of stock, contracts, and all cash and currency, or any interest therein, wherever located.

2.      "Contempt Defendants" means Glen E. Burke and American Health Associates, LLC.

3.      "Document" is synonymous in meaning and equal in scope to the terms "document" and "electronically stored information," as described and used in Federal Rule of Civil Procedure 34(a)(1)(A).

4.      "Receivership Defendants" means American Health Associates, LLC; Merchant's Depot, LLC; EV Holdings Limited Partnership; Warrior Racing, LLC; Advanced Nutrition Systems, LLC; Age Less Health Products, LLC; Compliance Filings LLC, d/b/a Corporate Records Compliance; Children's Hope for the Future, Inc.; Panama Total Marketing Corp.; Payment Resources; PR Holdings; Media Opportunity Advisor; Natural Health Alliance; and affiliates of any of the foregoing, as well as subsidiaries, divisions, successors, and assigns, and includes fictitious names under which any of them does business, and any entities engaged with them in a common enterprise.

5.      "Receiver" means Thomas Seaman of Thomas Seaman Company, the receiver appointed by the Court in Section VII of the TRO issued on January 28, 2012.  The term "Receiver" also includes any deputy receivers or agents as may be named by the Receiver.

## II.     ASSET FREEZE

**IT IS THEREFORE ORDERED** that Contempt Defendants are hereby restrained and enjoined from directly or indirectly:

A.      Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets, or any interest therein, wherever located, including outside the United States, that are:

1.      owned or controlled, directly or indirectly, by any Contempt Defendant(s), in whole or in part, or held, in whole or in part, for the benefit of any Contempt Defendant(s);

2.      in the actual or constructive possession of any Contempt Defendant(s);

3.      owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by,

3

or under common control with any Contempt Defendant(s), including, but not limited to, any

Assets of Glen E. Burke or American Health Associates, LLC, or any other entity acting under a

fictitious name owned by or controlled by any Contempt Defendant(s), and any Assets held by,

for, or under the name of any Contempt Defendant(s) at any bank or savings and loan institution,

or with any broker-dealer, escrow agent, title company, commodity trading company, payment

processing company, precious metal dealer, or other financial institution or depository of any

kind;

        B.      Opening or causing to be opened any safe deposit boxes titled in the name of any

Contempt Defendant(s), or subject to access by any Contempt Defendant(s);

        C.      Incurring charges or cash advances on any credit card, debit card, or checking

card issued in the name, singly or jointly, of any Contempt Defendant(s);

        D.      Obtaining a personal or secured loan;

        E.      Incurring liens or encumbrances on real property, personal property or other

Assets in the name, singly or jointly, of any Contempt Defendant(s); and

        F.      Cashing any checks or depositing any money orders or cash received from

consumers, clients, or customers of any Contempt Defendant(s).

        The Assets affected by this Section shall include:  (1) all Assets of Contempt Defendants

as of January 30, 2013; and (2) for Assets obtained after January 30, 2013, those Assets of

Contempt Defendants that are derived, directly or indirectly, from the Contempt Defendants'

activities as described in the Commission's Motion for Contempt, including the activities of any

Receivership Defendant.  This Section does not prohibit transfers to the Receiver, as specifically

required in Section X (Delivery of Receivership Property), nor does it prohibit the repatriation of

foreign Assets, as specifically required in Section V (Repatriation of Foreign Assets) of this

Order.

### III.    FINANCIAL REPORTS AND ACCOUNTING

**IT IS FURTHER ORDERED** that each Contempt Defendant shall:

A.    Unless already provided pursuant to the TRO entered on January 28, 2013, immediately prepare and serve on counsel for the FTC and the Receiver completed financial statements fully disclosing the Contempt Defendant's finances and those of all corporations, limited liability companies, partnerships, trusts or other entities that each Contempt Defendant owns, controls, or is associated with in any capacity, jointly or individually, on the forms attached to this Order as Attachments A and B, or in electronic format provided by the FTC, accurate as of the date of service of this Order upon Contempt Defendants;

B.    Unless already provided pursuant to the TRO entered on January 28, 2013, immediately prepare and serve on counsel for the FTC and the Receiver copies of signed and completed federal and state income tax forms, including all schedules and attachments for the three most recent filing years;

C.    Unless already provided pursuant to the TRO entered on January 28, 2013, immediately provide access to records and documents held by financial institutions outside the territory of the United States, by signing the Consent to Release of Financial Records attached to this Order as Attachment C; and

D.    Provide copies of such other financial statements as the Receiver or the FTC may request in order to monitor Contempt Defendants' compliance with the provisions of this Order.

### IV.    RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS AND THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution or depository, escrow agent, title company, commodity trading company, payment processing company, trust, entity, or person that:  (1) holds, controls, or maintains custody of any account or Asset owned or controlled by any Contempt Defendant(s); (2) holds, controls, or maintains custody of any Asset associated with credit or debit card charges, electronic fund transfers, or remotely created checks made by, or on behalf of, any Contempt Defendant(s) or any other entity owned or controlled by

any Contempt Defendant(s); or (3) has held, controlled, or maintained any account or Asset of, or on behalf of, any Contempt Defendant(s) at any time since January 1, 2011, shall:

      A.     Hold and retain within its control and prohibit Contempt Defendants or any other person or entity with control over such Assets from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, gifting, or otherwise disposing of any such Assets, funds, or other property, except:

           1.     As directed by further order of the Court; or

           2.     As directed in writing by the Receiver (regarding Assets held in the name or for the benefit of a Receivership Defendant);

      B.     Deny the Contempt Defendants access to any safe deposit box titled in the name of any Contempt Defendant(s), individually or jointly, or subject to access by any Contempt Defendant(s), whether directly or indirectly.

      C.     Unless already provided pursuant to the TRO entered January 28, 2013, immediately provide counsel for the FTC and the Receiver a certified statement setting forth:

           1.     The identification number of each such account or Asset titled: (1) in the name, individually or jointly, of any Contempt Defendant(s); (2) held on behalf of, or for the benefit of, any Contempt Defendant(s); (3) owned or controlled by any Contempt Defendant(s); or (4) otherwise subject to access by any Contempt Defendant(s), directly or indirectly;

           2.     The balance of each such account, or a description of the nature and value of such Asset, as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted;

           3.     The identification of any safe deposit box that is either titled in the name of any Contempt Defendant(s), or is otherwise subject to access by any Contempt Defendant(s); and

4.      If an account, safe deposit box, or other Asset has been closed or removed, the date closed or removed, the balance of any account or value of any Asset on such date, and the manner in which such account or Asset was closed or removed;

D.      Provide counsel for the FTC and the Receiver, within three (3) business days after being served with a request, copies of all documents pertaining to such account or Asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; provided that such institution or custodian may charge a reasonable fee; and

E.      Cooperate with all reasonable requests of the Receiver relating to this Order's implementation.

## V.      REPATRIATION OF FOREIGN ASSETS

**IT IS FURTHER ORDERED** that, to the extent not already completed pursuant to the TRO entered on January 28, 2013, each Contempt Defendant shall immediately:

A.      Provide counsel for the FTC and the Receiver with a full accounting of all funds and Assets outside of the territory of the United States which are held:  (1) by Contempt Defendant(s); (2) for the benefit of any Contempt Defendant(s); or (3) under direct or indirect control, individually or jointly, of any Contempt Defendant(s), as required by the forms included in Attachments A and B;

B.      Transfer to the territory of the United States all such funds and Assets in foreign countries; and

C.      Hold and retain all repatriated funds and Assets, and prevent any disposition, transfer, or dissipation whatsoever of any such Assets or funds, except as required by this Order.

## VI.      NON-INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Contempt Defendants, and each of their successors, assigns, members, officers, agents, servants, employees, and attorneys, and those persons in

7

active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other device, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, that may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by Section V of this Order, including but not limited to:

A.     Sending any statement, letter, fax, e-mail, or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that all Assets have been fully repatriated pursuant to Section V of this Order; and

B.     Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all Assets have been fully repatriated pursuant to Section V of this Order.

## VII.     RECEIVER

**IT IS FURTHER ORDERED** that Thomas Seaman of Thomas Seaman Company is appointed Receiver for the Receivership Defendants, with the full power of an equity Receiver. The Receiver shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order.  The Receiver shall be accountable directly to this Court.  The Receiver shall comply with all local rules and laws governing federal equity receivers.

## VIII.     COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Contempt Defendants shall fully cooperate with and assist the Receiver.  Contempt Defendants' cooperation and assistance shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order;

providing any login and password required to access any computer or electronic files or information in or on any medium; and advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver.  Contempt Defendants are hereby restrained and enjoined from directly or indirectly:

A. Transacting any of the business of the Receivership Defendants;

B. Excusing debts owed to the Receivership Defendants;

C. Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendants;

D. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver;

E. Failing to notify the Receiver of any Asset, including accounts, of any Receivership Defendant held in any name other than the name of the Receivership Defendant, or by any person or entity other than the Receivership Defendant, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such Assets; or

F. Doing any act or thing whatsoever to interfere with the Receiver's taking and keeping custody, control, possession, or managing of the Assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or documents of the Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court.

This Section does not prohibit transfers to the Receiver, as specifically required in Section X (Delivery of Receivership Property), nor does it prohibit the repatriation of foreign assets, as specifically required in Section V (Repatriation of Foreign Assets) of this Order.

## IX.    DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A.     Assume full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any Receivership Defendant from control of, management of, or participation in, the affairs of the Receivership Defendant.

B.     Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Defendant, wherever situated.  The Receiver shall have full power to divert mail and to sue for, collect, receive, take possession of, hold, and manage all Assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of any Receivership Defendant.

C.     Take all steps necessary to secure the business premises of the Receivership Defendants, which may include, but are not limited to, taking the following steps as the Receiver deems necessary or advisable:  (1) serving and filing this Order; (2) completing a written inventory of all receivership Assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, Social Security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) video-recording all portions of the location; (5) changing the locks and disconnecting any computer networks or other means of access to electronically stored information or other documents maintained at that location; or (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or Assets of the Receivership Defendants.  Such authority shall include, but not be limited to, the

10

authority to order any owner, director, or officer of the Receivership Defendants to leave the business premises.

D.     Conserve, hold, and manage all receivership Assets, and perform all acts necessary or advisable to preserve the value of those Assets, in order to prevent any irreparable loss, damage, or injury to consumers, including, but not limited to, obtaining an accounting of the Assets and preventing the transfer, withdrawal, or misapplication of Assets.

E.     Enter into contracts and purchase insurance as advisable or necessary.

F.     Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants.

G.     Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents.

H.     Choose, engage, and employ attorneys, accountants, appraisers, investigators, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities.

I.     Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Defendants, such as rental payments.

J.     Collect any money due or owing to the Receivership Defendants.

K.     Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Receiver deems necessary and

advisable to preserve or recover the Assets of the Receivership Defendants or to carry out the Receiver's mandate under this Order.

L.     Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted against the Receivership Defendants or the Receiver that the Receiver deems necessary and advisable to preserve the Assets of the Receivership Defendants or to carry out the Receiver's mandate under this Order.

M.     Continue and conduct the businesses of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the businesses profitably, using the Assets of the receivership estate, and lawfully, if at all.

N.     Take depositions and issue subpoenas to obtain documents and records pertaining to the receivership and compliance with this Order.  Subpoenas may be served by agents or attorneys of the Receiver and by agents of any process server retained by the Receiver.

O.     Open one or more bank accounts as designated depositories for funds of the Receivership Defendants.  The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account.

P.     Maintain accurate records of all receipts and expenditures made by the Receiver.

## X.     DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that immediately, to the extent not already completed pursuant to the TRO entered January 28, 2013, the Contempt Defendants and the Receivership Defendants shall forthwith or within such time as permitted by the Receiver in writing, deliver to the Receiver possession and custody of:

A.     All funds, Assets, and property of the Receivership Defendants, whether situated within or outside the territory of the United States, that are:  (1) held by any Receivership

Defendant, (2) held for the benefit of any Receivership Defendant, or (3) under the direct or indirect control, individually or jointly, of any Receivership Defendant;

B.      All documents of the Receivership Defendants, including but not limited to all books and records of Assets, including funds and property, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, records of ACH transactions, and check registers), corporate minutes, contracts, customer and consumer lists, title documents, and electronic records;

C.      All funds and other Assets belonging to members of the public now held by the Receivership Defendants;

D.      All keys, computer and other passwords, entry codes, combinations to locks required to open or gain access to any of the property or effects, and all monies in any bank deposited to the credit of any Receivership Defendant, wherever situated; and

E.      Information identifying the accounts, employees, properties, or other Assets or obligations of the Receivership Defendants.

## XI.   TRANSFER OF FUNDS TO THE RECEIVER BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution or depository, escrow agent, title company, commodity trading company, payment processing company, or trust shall cooperate with all reasonable requests of counsel for the FTC and the Receiver relating to implementation of this Order, including transferring funds at the Receiver's direction and producing records related to the Assets and sales of the Receivership Defendants.

## XII.   RECEIVER'S REPORTS

**IT IS FURTHER ORDERED** that the Receiver shall report to this Court within 60 days of entry of this Order, and as ordered by the Court thereafter, regarding: (1) the steps taken by the Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated Assets of the Receivership Defendants; (3) the sum of all liabilities of the Receivership Defendants; (4) the steps the Receiver intends to take in the future to: (a) prevent any diminution

in the value of Assets of the Receivership Defendants; (b) pursue receivership Assets from third parties; and (c) adjust the liabilities of the Receivership Defendants, if appropriate; and (5) any other matters which the Receiver believes should be brought to the Court's attention.  Provided, however, if any of the required information would hinder the Receiver's ability to pursue receivership Assets, the portions of the Receiver's report containing such information may be filed under seal and not served on the parties.

### XIII.   COMPENSATION OF THE RECEIVER

**IT IS FURTHER ORDERED** that the Receiver, and all persons or entities retained or hired by the Receiver as authorized under this Order, shall be entitled to reasonable compensation for the performance of duties undertaken pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them from the Assets now held by or in the possession or control of, or which may be received by, the Receivership Defendants.  The Receiver shall file with the Court and serve on the parties a request for the payment of reasonable compensation at the time of the filing of any report required by Section XII.  The Receiver shall not increase the fees or rates used as the bases for such fee applications without prior approval of the Court.

### XIV.   ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that the Receiver shall allow the FTC and Contempt Defendants, and their respective representatives, reasonable access to the premises of the Receivership Defendants.  The purpose of this access shall be to inspect, inventory, and copy any documents and other property owned by, or in the possession of, the Receivership Defendants, provided that those documents and property are not removed from the premises without the permission of the Receiver.  The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

If any documents, computers, or electronic data storage devices containing information related to the business practices or finances of the Receivership Defendants are at a location other than those listed in the TRO, including but not limited to the personal residence(s) of the

Contempt Defendants, then, to the extent not already produced pursuant to the TRO, Contempt Defendants shall immediately produce to the Receiver all such documents, computers, or electronic data storage devices.  In order to prevent the destruction of electronic data, any computers or electronic data storage devices containing such information shall be powered down (turned off) in the normal course for the operating systems used on such devices and shall not be used until produced for copying and inspection, along with any codes needed for access.

To the extent not already produced pursuant to the TRO, the Receivership Defendants shall immediately produce to the Receiver a list of all agents, employees, officers, servants and those persons in active concert and participation with them, who have been associated or done business with the Receivership Defendants.

## XV.   PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that Contempt Defendants, and each of their successors, assigns, members, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device, are hereby restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents that relate to the business practices or finances of any Contempt Defendant, including, but not limited to, any contracts, accounting data, correspondence, advertisements, computer tapes, disks or other computerized records, customer lists, books, written or printed records, handwritten notes, recordings, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state, or local business or personal income or property tax returns.

## XVI.   PROHIBITION ON USE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Contempt Defendants, and officers, agents, directors, servants, employees, salespersons, and attorneys of Contempt Defendants, as well as all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, are hereby restrained and enjoined from using, benefitting from, selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, email address, Social Security number, credit card number, debit card number, bank account number, any financial account number, or any data that enables access to a customer's account, or other identifying information of any person which any Contempt Defendant obtained prior to entry of this Order in connection with the marketing or sale of any good or service, including those who were contacted or are on a list to be contacted by any of the Defendants; provided that Contempt Defendants may disclose such identifying information to a law enforcement agency or as required by any law, regulation, or court order.

## XVII.          CREDIT REPORTS

**IT IS FURTHER ORDERED** that the FTC may obtain credit reports concerning any of the Contempt Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the FTC.

## XVIII.          RECORDKEEPING/BUSINESS OPERATIONS

**IT IS FURTHER ORDERED** that Contempt Defendants are hereby restrained and enjoined from:

A.      Failing to create and maintain documents that, in reasonable detail, accurately, fairly, and completely reflect their incomes, disbursements, transactions, and use of money;

B.      Creating, operating, or exercising any control over any business entity, including any partnership, limited partnership, joint venture, sole proprietorship, limited liability company

or corporation, without first providing the Commission with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities; and

C.     Affiliating with, becoming employed by, or performing any work for any business that is not a named Contempt Defendant in this action without first providing the Commission with a written statement disclosing: (1) the name of the business; (2) the address and telephone number of the business; and (3) a detailed description of the nature of the business or employment and the nature of the Contempt Defendant's duties and responsibilities in connection with that business or employment.

## XIX.   BANKRUPTCY PETITIONS

**IT IS FURTHER ORDERED** that, in light of the appointment of the Receiver, the Receivership Defendants are hereby prohibited from filing petitions for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., without prior permission from this Court.

## XX.   STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

A.     Except by leave of this Court, during the pendency of the Receivership ordered herein, the Receivership Defendants and all customers, principals, investors, creditors, stockholders, lessors, and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of the Receivership Defendant, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective attorneys, servants, agents, and employees be and are hereby stayed from:

1.     Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2.      Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any Asset; attempting to foreclose, forfeit, alter, or terminate any interest in any Asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3.      Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process, whether specified in this Order or not; or

4.      Doing any act or thing whatsoever to interfere with the Receiver's taking custody, control, possession, or management of the Assets or Documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendants.

B.      This Section does not stay:

1.      The commencement or continuation of a criminal action or proceeding;

2.      The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

3.      The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

4.      The issuance to the Receivership Defendants of a notice of tax deficiency.

## XXI.    SERVICE OF ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission or email, by employees or agents of the FTC or the Receiver, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or Assets of Contempt Defendants, or that may otherwise be subject to

any provision of this Order.  Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

### XXII.        ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that each Contempt Defendant, within three (3) business days of receipt of this Order, must submit to counsel for the FTC a truthful sworn statement acknowledging receipt of this Order.

### XXIII.    PROOF OF DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Contempt Defendants shall immediately provide a copy of this Order to their agents, servants, employees, consultants, and any affiliated businesses, and other persons and entities subject in any part to their direct or indirect control.  Within five (5) business days of receipt of this Order, Contempt Defendants must submit to counsel for the FTC a truthful sworn statement identifying those persons and entities to whom this Order has been distributed.

### XXIV.        CORRESPONDENCE

**IT IS FURTHER ORDERED** that, for the purposes of this Order, all correspondence and service of pleadings on the FTC shall be addressed to:

> Sarah Waldrop
> Reenah Kim
> 600 Pennsylvania Avenue, NW
> Mailstop M-8102B
> Washington, DC 20580
> Telephone: (202) 326-3444, -2272
> Fax: (202) 326-2558
> Email: swaldrop@ftc.gov, rkim1@ftc.gov

## XXV.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that the Court shall continue to retain jurisdiction of this matter for all purposes.


SO ORDERED this _ 5th day of March, 2013                  .


PHILIP M. PRO
United States District Court for the
District of Nevada